# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICARDO BOPP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 09-1736 (RJL) |
| WELLS FARGO BANK, N.A., *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(September 20 2010) [#5, #6]

Plaintiff, Ricardo Bopp ("Bopp"), brings this action against Wells Fargo Bank, N.A. ("Wells Fargo"), World Savings Bank, FSB ("World"), Wachovia Mortgage, FSB ("Wachovia"), and Transcontinental Title Company ("TTC"), seeking damages and a declaratory judgment for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.*, and state law. Before the Court is a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement and to Strike Portions of Plaintiff's Complaint by Wells Fargo, World, and Wachovia (collectively, the "defendants"). For the following reasons, the defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Bopp is the sole owner and operator of a home reconstruction and renovation business. Compl. ¶ 15. In late 2006, his business experienced a decline in revenue, and he could no longer meet his monthly mortgage obligation. *Id.* On or about January 25,

2007, Bopp contacted World about refinancing his home. *Id.* ¶ 17. World was subsequently acquired by Wachovia, *id.* ¶ 1, which eventually merged with Wells Fargo, *id.* ¶ 6. Bopp completed a Uniform Residential Loan Application to assess his credit-worthiness for a fixed rate loan program called "Pick-A-Payment." *Id.* ¶¶ 18-19. The Pick-A-Payment loan provides four payment options every month: a minimum payment amount, an interest only payment amount, a payment based on a 30-year amortization, and a payment based on a 15-year amortization. *Id.* ¶ 10. Several days later, Bopp received notice from World that his loan had been approved. *Id.* ¶ 21. Bopp closed on his loan on March 8, 2007, with a representative from TTC, which conducts closings and settlement for properties in the District of Columbia. *Id.* ¶¶ 8, 23. Ultimately, Bopp defaulted on the loan, and the defendants began to foreclose on the property. *Id.* ¶ 35. Plaintiff filed this suit on August 7, 2009, in Superior Court. Defendants removed the action to this Court on September 11, 2009.

## ANALYSIS

Defendants move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (stating that if a court has determined that

a plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). When a Court is resolving a motion to dismiss, "the complaint is construed liberally in the plaintiff['s] favor," and he is granted "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). At the same time, the Court need not accept the inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint," nor must it "accept legal conclusions cast in the form of factual allegations." *Id.* Nor must this Court "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

Regulation Z implements TILA and requires a creditor to make certain disclosures, including the identity of the creditor, the amount financed, and the annual percentage rate of a proposed loan, before consummation of the transaction. *See* 15 U.S.C. § 1638; 12 C.F.R. §§ 226.17-226.18. It also mandates that a "creditor shall make the [required disclosures] clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). These disclosures must be grouped together and, for this reason, many lenders place the disclosures in a TILA Disclosure Statement ("TILD"). In addition, lenders who secure an interest in the borrower's home must provide "good faith estimates" of these disclosures in writing at least seven business days before a transaction

is consummated. *See* 15 U.S.C. § 1638(b)(2).

TILA provides for rescission and statutory penalties if the creditor fails to make certain disclosures required under the statute. *See* 15 U.S.C. § 1640(a). To prevail on a damages claim for a TILA violation, however, a plaintiff must bring suit "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In addition, as there is no allegation in the Complaint that Bopp did not receive notice of his right to rescind his loan at closing,[1] Bopp had "until midnight of the third business day following the consummation of the transaction or the delivery of" all required information and disclosures, whichever is later, to rescind. 15 U.S.C. § 1635(a). Under the facts of this case, Bopp's claim for a violation of TILA is barred by the applicable statute of limitations. How so?

Although plaintiff asserts that he did not receive a good faith estimate of his closing costs or sign his loan application prior to closing, he does admit in his Complaint that he received and signed those documents at the March 8, 2007 closing. *See* Compl. ¶¶ 22, 25, Ex. 3. Furthermore, despite Bopp's claim that "[u]pon information and belief . . . he was never provided a Truth and Lending Disclosure Statement," Compl. ¶ 26, he attached *as an exhibit to his Complaint* the TILD that he signed and received at the March 8, 2007 closing. *See* Compl. Ex. 4. Because this Court does not have to accept as true

---

[1] Bopp asserts in a footnote in his opposition to defendants' motion that he did not receive notice of right to rescind. Pl.'s Opp'n 7 n1. Because plaintiff did not raise any such allegations in his Complaint, the Court does not consider whether any purported failure to notify Bopp his right to rescind provides the basis for a TILA violation in this case.

4

any factual allegations in the Complaint insofar as they contradict exhibits to the complaint or matters subject to judicial notice, *see Kaempe*, 367 F.2d at 963, I find that plaintiff received the required TILA disclosures no later than March 8, 2007.

To that end, Bopp's assertions that the defendants failed to make certain mandatory disclosures, thereby extending his right to rescind, are, at best, unpersuasive. Plaintiff primarily bases his TILA claim on an alleged failure of the defendants to provide him with a TILD that clearly and conspicuously disclosed: (1) that the payment schedules provided to Bopp were not based on his "actual" interest rate; and (2) that negative amortization was certain to occur. As an initial matter, only "a lender's failure to disclose the existence of a variable rate feature"—a situation not present here—will toll the rescission period. *Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080, *42 (D. Ill. 2003). "A lender's failure to provide any of the other rate disclosures required by 12 C.F.R. §§ 226.18(f) and 226.19(b) may subject it to other sanctions, but it will not extend the rescission period granted to the consumer." *Id.* at *42-43. Regardless, I find that the Note and the TILD provided to Bopp correctly identify the initial interest rate and annual percentage rate and also clearly and conspicuously disclosed that the actual cost of the credit would depend on the payment option that he selected. *See* Compl. Ex. 3-4.

Furthermore, the Note and the TILD indicate that negative amortization could result, depending upon the payment option that plaintiff selected. *See id.*; *see also* Commentary to 12 C.F.R. § 226.19(b), 60 Fed. Reg. 16771, 16780 (Apr. 3, 1995) ("A

creditor must disclose, where applicable, the possibility of negative amortization. . . . If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase)."). Here, Bopp's Note, which is quoted in his Complaint and attached as Exhibit 3, stated,

> My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender *and may not be sufficient to pay the entire amount of Interest accruing on the unpaid Principal balance.* . . . From time to time my monthly payment may be insufficient to pay the total amount of monthly interest that is due. *If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.*

Compl. Ex. 3 at 2-3 (emphasis added). In addition, the TILD expressly referenced, in all capital letters, a Deferred Interest Acknowledgment Disclosure ("DIAD"), which Bopp also received on March 8, 2007. *See* Compl. Ex. 4. The DIAD stated,

> You have selected a loan product that lets you choose how much to pay each month from among several choices on your billing statement. As described below, *if you make a periodic payment that is less than the interest owing on the loan, you will incur deferred interest and the principal balance of your loan will increase.*

Defs.' Reply Ex. A at 1 (emphasis added).[2] The DIAD goes on to define deferred interest

---

[2] A court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice without converting a motion to dismiss into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the DIAD was incorporated by reference into the Complaint by virtue of the exhibits that Bopp attached and are considered by this Court to determine whether a disclosure was clear, as required by TILA.

and discuss the various payment options available to Bopp. *See id.* Thus, putting aside the issue of whether the Commentary to § 226.19 even requires lenders to disclose the likelihood, or certainty, that a borrower will experience negative amortization, Bopp's argument that the defendants failed to disclose that negative amortization was certain to occur in violation of TILA is unavailing for two reasons. First, negative amortization was *not* certain to occur. It resulted because of the payment option that Bopp himself chose. Second, the DIAD clearly and conspicuously discloses that negative amortization *would* in fact occur if Bopp chose to make a payment less than the interest owed on the loan.

Finally, plaintiff's argument that he did not receive a copy of the TILD until March 8, 2009, and that the statute of limitations thus should be equitably tolled is wholly unconvincing. The TILD attached to the Complaint as Exhibit 4 is signed and dated March 8, 2007. *See* Compl. Ex. 4. Therefore, I find that Bopp received all required TILA disclosures by March 8, 2007, and the one year statute of limitations period for TILA violations applies. Plaintiff did not file the instant action until August 7, 2009. As a result, his TILA claim in Count I is time-barred and must be dismissed.

Bopp's remaining claims against these defendants are state law claims for breach of the implied covenant of good faith and fair dealing (Count II), fraudulent misrepresentation (Count III), declaratory judgment/quiet title (Count IV), and equitable estoppel (Count VII), each of which is preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.* HOLA was designed to create a nationwide system

of federal savings and loan associations to be centrally regulated. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-61 (1982). To that end, HOLA states that the Office of Thrift Supervision ("OTS") "hereby occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). This regulation also states that "OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation" and that, except for as provided, these "federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities." *Id.*; *see also Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) ("*[F]ield* preemption applies because Appellants' state law claims provide state remedies for violations of federal law in a field preempted entirely by federal law. The general presumption against preemption is not applicable here, and the relevant regulation is clear—the field of lending regulation of federal savings associations is preempted." (emphasis in original)). It is clear that the gravamen of Bopp's state law claims is the same as what underlies his TILA claim. A thorough reading of plaintiff's Complaint reveals that he is challenging the terms of his credit, the manner in which his loan was amortized, the quality and quantity of information disclosed to him, and the manner in which his mortgage application loan and origination was processed. All of these complaints are expressly enumerated in HOLA as illustrative examples of preempted state law. *See* 12 C.F.R. § 560.2(b)(4)-(5), (9)-(11);

*see also* OTS Final Rule, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996) ("When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted."). Even if plaintiff's claims could be characterized as not falling within one of HOLA's illustrative examples in § 560.2(b), he cannot demonstrate that the state law claims "only incidentally affect the lending operations of Federal savings associations." 12 C.F.R. § 560.2(c); *see also* OTS Final Rule, 61 Fed. Reg. at 50966-67 ("[P]aragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption."). Bopp was too late to sue under TILA, and his attempt to plead around it will not succeed. The state law claims asserted against the defendants in Counts II, III, IV, and VII must, therefore, be dismissed as preempted.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendants' Motion To Dismiss and DISMISSES Counts I, II, III, IV, and VII of the Complaint. Furthermore, the Court DENIES AS MOOT defendants' Motion for More Definite Statement and to Strike Portions of Plaintiff's Complaint. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge